**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Stephen Bushansky, | ) | Case No. 1:26-cv-00617-SJD |
| | ) | Judge Susan J. Dlott |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| August J. Troendle, *et al.*, | ) | **ORAL ARGUMENT REQUESTED** |
| | ) | |
| Defendants, | ) | |
| | ) | |

**DEFENDANTS' MOTION TO DISMISS THE STOCKHOLDER DERIVATIVE COMPLAINT AND MEMORANDUM IN SUPPORT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants August J. Troendle, Jesse J. Geiger, Kevin M. Brady, Susan E. Burwig, Stephen P. Ewald, Brian T. Carley, Fred B. Davenport, Jr., Femida H. Gwadry-Sridhar, Robert O. Kraft, Cornelius P. "Neal" McCarthy III, and Dani S. Zander (the "Individual Defendants"), and Medpace Holdings, Inc. ("Medpace") (collectively, "Defendants"), move to dismiss Plaintiff Stephen Bushansky's Complaint. In general, the grounds for this Motion are as follows.

*First*, Plaintiff lacks standing to maintain a derivative action because he made no pre-suit demand on Medpace's Board of Directors as Federal Rule of Civil Procedure 23.1 and Delaware law require and failed to meet the Sixth Circuit's heightened standard for pleading demand futility under Federal Rule 23.1(b)(3).

*Second*, Plaintiff's claim under Exchange Act Section 14(a) fails because it is (i) barred by the applicable statute of limitations, (ii) the allegations do not plausibly plead the proxy statements contained material misstatements or omissions, and (iii) Plaintiff has not plausibly pled loss or transaction causation.

*Third*, the Exchange Act Section 21D contribution claim is not ripe for adjudication because Plaintiff has not pled any underlying liability giving rise to a contribution right.

*Fourth*, the remaining state law claims should be dismissed because exercising supplemental jurisdiction would be improper, or alternatively, because the allegations fail to plausibly plead so-called *Caremark* or *Brophy* claims under those exacting Delaware precedents.

The Court must dismiss the Complaint for these reasons and others detailed below.

Respectfully submitted,

*/s/ Michael L. Scheier*
Michael L. Scheier
Jacob D. Rhode
Keating Muething & Klekamp PLL
One E. 4th Street, Suite 1400
Cincinnati, OH 45202
Tel: (513) 579-6400
mscheier@kmklaw.com
jrhode@kmklaw.com
*Attorneys for Defendants*

## STATEMENT REQUESTING ORAL ARGUMENT

Pursuant to Local Rule 7.1(b)(2), Defendants request oral argument on the Motion. Oral argument will materially assist the Court in resolving the issues presented because this derivative action raises threshold legal questions warranting dispositive relief. Given the interplay of federal and state standards, the number of Individual Defendants, and the dispositive nature of these legal questions, oral argument will enable a more efficient and complete presentation of the parties' positions and assist the Court in its determination.

## I. Background: Plaintiff and His Counsel – Serial Litigants

This action is the latest in a series of collusions between Plaintiff Stephen Bushansky and his counsel. In the past five years alone, Plaintiff and his counsel have filed, to Defendants' knowledge, at least six similar lawsuits in federal court. *See, e.g., Stephen Bushansky v. Steven J. Sell, et al.,* No. 1:26-cv-00092 (W.D. Tex.) (uncontested dismissal); *Stephen Bushansky v. Joshua Charlesworth*, *et al.*, No. 3:25-cv-00621 (W.D.N.C.) (stayed pending resolution of related case, *Cameron v. Krispy Kreme, Inc. et al.*, No. 3:25-cv-00332 (W.D.N.C.)); *Stephen Bushansky v. Robert Antokol, et al.*, No. 1:22-cv-06758 (E.D.N.Y.) (terminated upon resolution of related case, *Bar-Asher v. Playtika Holding Corp. et al*, No. 1:21-cv-06571 (E.D.N.Y.) (dismissed with prejudice)); *Stephen Bushansky v. Leen H. Kawas, et al.*, No. 2:22-cv-00497 (W.D. Wash.) (settlement); *Stephen Bushansky v. Christopher M. Gorman, et al.*, No. 1:23-cv-02257 (N.D. Ohio) (settlement); *Stephen Bushansky v. Harry Stylli, et. al.*, No. 3:21-cv-01065 (S.D. Ca.) (settlement). Their greenmail playbook is familiar: invoke fanciful Exchange Act violations to pressure Defendants for cash. This case is just another chapter in a bad-faith corporate-intimidation campaign that harms rather than helps public-company shareholders.

## II. Plaintiff's Allegations

Plaintiff purports to sue derivatively on Medpace's behalf for alleged state and federal-law violations. *See generally* Compl., Doc. 1. He made no pre-suit demand on Medpace's Board. *Id.* at ¶ 139, PageID 38–39. His claims rest on Medpace's fourth-quarter 2025 book-to-bill ratio, which came in lower than Plaintiff contends investors were led to expect during earlier Earnings Calls. *Id.* at ¶¶ 4, 94–106, PageID 3, 26–29.

Medpace is a clinical research organization headquartered in Cincinnati and incorporated in Delaware. Compl., Doc. 1 at ¶¶ 2, 12, PageID 2, 5. Plaintiff asserts Medpace gradually recognizes revenue from its clients as its clinical trials and other services progress. *Id.* at ¶

3, PageID 2–3. In Plaintiff's view, Medpace's business model relies on converting clinical trial services into revenue, even though revenue is sometimes lost to project cancellation or termination. *Id*. That conversion rate, which compares the dollar value of new business awards during a given period (bookings) to the revenue recognized during that same period (billings), is known as a book-to-bill ratio. *Id.* at ¶ 4 n.1, PageID 3.

Clinical-trial contracts may be cancelled before completion, including when a sponsor lacks funding or a drug proves ineffective. On the Earnings Calls, Medpace representatives warned that forward-looking statements "involve inherent assumptions with known and unknown risks and uncertainties," and that book-to-bill estimates were subject to "important factors that could cause actual results to differ materially from … current expectations," which are discussed in Medpace's Form 10-K and other SEC filings. Ex. A, MEDP.OQ – Q3 2025 Medpace Earnings Call Tr., Doc. 13 at PageID 98.[1] These oral and related written warnings place the projections within the PSLRA safe harbor for forward-looking statements. *See* 15 U.S.C. § 78u-5.

On April 22, July 22, and October 23, 2025, Medpace projected it hoped to achieve an approximately 1.15 book-to-bill ratio for the second half of fiscal year 2025. Compl., Doc. 1 at ¶¶ 92, 94–96, 98, 100, 102–104, PageID 25–28. Plaintiff alleges that the Individual Defendants sold Medpace stock between April 22 and December 3, 2025. *Id.* at ¶¶ 122–35, PageID 33–38. Each sale occurred during an open trading window, was reported on SEC Form 4, and complied with Medpace's Insider Trading Policy. *See, e.g., id.* at ¶ 123, PageID 34.

[1] "A district court may consider documents submitted by the defendant without converting a motion to dismiss to a motion for summary judgment if they are 'referred to in the pleadings' and 'integral to the claims.'" *Moyer v. Gov't Emps. Ins. Co.*, 114 F.4th 563, 568 (6th Cir. 2024) (quoting *Bash v. Textron Fin. Corp. (In re Fair Fin. Co.)*, 834 F.3d 651, 656 n. 1 (6th Cir. 2016)). Here, both factors are present. Plaintiff references and quotes from the Earnings Calls extensively. *See e.g.,* Compl., Doc. 1 at ¶¶ 98–105, PageID 27–28. Accordingly, the Court may consider the Earnings Calls transcripts, attached as Exhibit A, without converting the Motion to one for summary judgment.

Medpace reported that its fourth quarter 2025 book-to-bill ratio was 1.04 in February 2026. Compl., Doc. 1 at ¶ 107, PageID 29. Its stock declined from a per-share closing price of $530.35 at the February 9, 2026 close to $446.05 on February 10. *Id.* at ¶ 112, PageID 31. Since then, Medpace's stock rose above $626 per share as of August 20, 2026.[2]

The Complaint also describes Medpace's extensive governance mechanisms: its Code of Conduct, Insider Trading Compliance Policy, Audit, Compensation, Nominating and Governance Committees, and Corporate Governance Guidelines. *Id.* at ¶¶ 30–71, PageID 10–19.

## III. Legal Standard

### A. Heightened Pleading Under Federal Rule 23.1 and Exchange Act 14(a)

Failure to comply with Rule 23.1 defeats standing. *In re Ferro Corp. Derivative Litig.,* 511 F.3d 611, 617 (6th Cir. 2008) (citation omitted). Fed. R. Civ. P. 23.1(b)(3) requires particularized pleading of demand efforts or reasons for not making demand, and Delaware law governs demand futility because Medpace is a Delaware corporation. *Id.* The Sixth Circuit's heightened standard "'differs substantially' from ordinary notice pleading." *In re Cardinal Health, Inc. Derivative Litig.,* 518 F. Supp. 3d 1046, 1063 (S.D. Ohio 2021) (citations omitted); *see also Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000). It is more demanding than the *Iqbal/Twombly* plausibility test applicable to most Rule 12(b)(6) challenges.

To plausibly plead futility under *United Food & Com. Workers Union & Participating Food Indus. Emps. Tri-State Pension Fund v. Zuckerberg*, 262 A.3d 1034 (Del. 2021), a plaintiff must allege particularized facts establishing, *on a per-person basis*, that the "director received a

---

[2] *See Medpace Holdings Inc.*, WALL STREET J., https://www.wsj.com/market-data/quotes/MEDP (last visited Aug. 20, 2026, 12:00 PM ET). The Court "may take judicial notice of well-publicized stock prices without converting the motion to dismiss into a motion for summary judgment." *In re Keithley Instruments, Inc. Secs. Litig.*, 268 F.Supp.2d 887, 896 n.6 (N.D. Ohio 2002) (quoting *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 166 n.8 (2d Cir. 2000)); *see also SEC v. Jones*, No. 5:24-cv-1560, 2026 WL 1850110, at *7 (N.D. Ohio June 27, 2026) (same).

material personal benefit from the alleged misconduct," that the "director faces a substantial likelihood of liability on any of the claims," or that the "director lacks independence from someone who received a material personal benefit from the alleged misconduct." *Id.* at 1059. Moreover, "[a] plaintiff seeking to show that a director was not independent must satisfy a materiality standard." *Id*. at 1060. To do so, a plaintiff must allege that "the director in question had ties to the person whose proposal or actions he or she is evaluating that are sufficiently substantial that he or she could not objectively discharge his or her fiduciary duties." *Id*. at 1061 (citation omitted).

A heightened pleading standard also applies to Plaintiff's Section 14(a) claim. The PSLRA requires "heightened, particularized pleadings to support a 14(a) claim." *Emps. Ret. Sys. of City of St. Louis v. Jones*, No. 2:20-cv-04813, 2021 WL 1890490, at *7 (S.D. Ohio May 11, 2021). In addition, Plaintiff must meet the Rule 9(b) pleading standard applicable to fraud or mistake. *Id.* Plaintiff must identify each misleading statement, explain its materiality, and state why it misleads. *Id.* In a proxy, a fact is material if "a reasonable shareholder would consider it important in deciding how to vote." *Smith v. Robbins & Myers, Inc*., 969 F. Supp. 2d 850, 869 (S.D. Ohio 2013) (cleaned up).

**B. Rule 12(b)(6) — Failure To State A Claim**

Apart from demand futility and Section 14(a), the Complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The Court "need not accept as true legal conclusions or unwarranted factual inferences." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (cleaned up). A complaint that suggests "the mere possibility of misconduct" is insufficient. *Iqbal*, 556 U.S. at 679 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Dismissal is appropriate where the "plaintiff can prove no set of facts in support

of his claim which would entitle him to relief." *Guzman v. U.S. Dep't of Homeland Sec.*, 679 F.3d 425, 429 (6th Cir. 2012) (quotation omitted).

## IV. Argument

### A. Plaintiff Lacks Statutory Standing Because He Fails to Adequately Allege Demand Futility under Rule 23.1(b)(3).

***Governing Principles.*** Demand is a prerequisite to a derivative action—only directors may sue for the corporation, and a shareholder may proceed only if demand would be futile. *In re Ferro Corp. Derivative Litig.*, 511 F.3d at 617; *Zuckerberg*, 262 A.3d at 1047. Plaintiff made no demand. Compl., Doc. 1 at ¶ 139, PageID 38–39. He therefore must plead particularized facts showing futility. *Zuckerberg*, 262 A.3d at 1048. Ordinary directors' fees, committee service, personal friendships, outside business relationships, and financial ties—without more—do not suffice. *Merchants' Nat'l Props., Inc. v. Meyerson*, No. Civ.A.13139, 2000 WL 1041229, at *6 (Del. Ch. July 24, 2000) (citation omitted); *Marchner v. Riley*, No. 2025-0164-LWW, 2026 WL 2332358, at *6 (Del. Ch. Mar. 30, 2026); *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1050 (Del. 2004); *Zuckerberg*, 262 A.3d at 1061.

Instead, under *Zuckerberg* Plaintiff must show, "*on a director-by-director basis*," that at least four of Medpace's seven directors received a "*material* personal benefit from the alleged misconduct," face a "*substantial* likelihood of liability" or "lack[ ] independence" from a primary alleged wrongdoer. *Zuckerberg*, 262 A.3d at 1059 (emphasis added). He does not.

***Plaintiff's Allegations About Five of Seven Directors Do Not Excuse Demand.*** As to Carley, Davenport, Gwadry-Sridhar, Kraft, and Zander, Plaintiff alleges only that they failed to inform themselves of facts as committee members, served when the book-to-bill statements were made, were reelected based on proxy statements, and sold Medpace stock. These allegations do not show that any director could not fairly consider a demand. Compl., Doc. 1 at ¶¶ 152–57,

PageID 42–43 (Carley); *id.* at ¶¶ 158–68, PageID 43–46 (Davenport and Gwadry-Sridhar); *id.* at ¶¶ 169–76, 183–88, PageID 46–48, 50–51 (Kraft and Zander). Courts routinely reject such generalized allegations as insufficient to excuse demand under Rule 23.1(b)(3). *See, e.g., In re Keithley Instruments, Inc., Derivative Litig.*, 599 F.Supp.2d 875, 895 (N.D. Ohio 2008) (allegations of committee membership); *In re EngageSmart, Inc. S'holder Litig.*, 354 A.3d 796, 844 (Del. Ch. 2026) (nomination to a board insufficient); *Avisar v. Chen*, No. 1:23-cv-01980, 2024 WL 2816021, at *8–12 (N.D. Ohio June 3, 2024) (pleading financial interest in corporate stock trades insufficient).

The recent decision in *In re AEP S'holder Derivative Litig.,* Nos. 2:21-cv-163 and 2:21-cv-1611, 2023 WL 2586340 (S.D. Ohio Mar. 21, 2023) is particularly instructive. There, the plaintiff argued that demand was futile because, as Plaintiff alleges here, the directors were "interested" through their sale of shares. *Id.* at *5–6. The court disagreed, holding that the directors were not "interested" because the directors did not receive a financial benefit from the at issue transaction that was different than other shareholders. *Id.* at *6. Moreover, the court also rejected the plaintiff's argument demand was futile because the directors did not sufficiently inform themselves of relevant facts, precisely what Plaintiff alleges. *Id*. The court held that, as here, such allegations were conclusory, lacking the necessary "particularity." *Id.* The same is true here.

### B. Rule 12(b)(6) - Plaintiff Failed to Plead Plausible Federal Securities Law Violations.

Demand futility aside, Plaintiff's federal claims also fail for several additional reasons.

#### i. Count I – Exchange Act 14(a) Claim

***The Section 14(a) Claim is Time-Barred.*** "The statute of limitations period governing Section 14(a) claims is one year from discovery or three years from the occurrence that gives rise to the complaint, whichever is shorter." *In re Keithley Instruments*, 599 F. Supp. 2d at 903 (citing

cases). Plaintiff bases Count I on the April 2, 2025 Proxy Statement. Compl., Doc. 1 at ¶¶ 114–19, PageID 31–33. The Complaint says the underlying misconduct was first discoverable on the April 22, 2025 Earnings Call. *Id.* at ¶ 80, PageID 21. The one-year limitations period therefore expired on April 22, 2026. Plaintiff filed the Complaint on June 22, 2026—two months too late. *See Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (when allegations show claim is time-barred, 12(b)(6) dismissal is appropriate) (citation omitted).

***The Section 14(a) Claim Fails the PSLRA's Heightened Pleading Standard.*** A Section 14(a) claim requires: (1) a material misrepresentation or omission in a proxy statement; (2) the misrepresentation or omission was at least negligent; (3) the misrepresentation or omission caused plaintiff's injury; and (4) the material misrepresentation or omission in a proxy statement is an "essential link" to alleged damages. *Jones,* 2021 WL 1890490, at *7 (citation omitted).

Plaintiff asserts that Defendants released the Proxy Statement with materially false or misleading information primarily related to shareholder voting on director candidates. Compl., Doc. 1 at ¶¶ 193–202, PageID 52–54. Ironically, these allegations, spanning 10 pages and over 40 paragraphs, prove the opposite point—the robust nature of Medpace's internal governance controls. *Id.* at ¶¶ 30–71, PageID 10–19. There is no non-conclusory allegation that these statements are false, misleading, or material to a shareholder considering the slate of directors.

Moreover, Plaintiff also alleges, without detail, that the Individual Defendants failed to "implement and maintain an effective system of internal controls" and "effectively oversee and monitor the material risks facing the Company" and that they failed to act on otherwise unarticulated "red flags." *Id.* at ¶ 119, PageID 32–33. That is all. There is no further detail. Plaintiff pleads no particularized basis for materiality or any connection between director reelection and

harm to Medpace. *Id*. at ¶ 201, PageID 54. These conclusory allegations satisfy neither the PSLRA nor Rule 9(b). *Jones*, 2021 WL 1890490, at *7.

To the extent the Complaint alleges that Medpace failed to disclose book-to-bill and other financial information in the Proxy Statement, these allegations also fail to state a claim. Compl., Doc. 1 at ¶ 197, PageID 53. A proxy statement seeking votes in a board election need not disclose internal book-to-bill projections or cancellation data. *See Smith*, 969 F. Supp. 2d at 874 ("Courts generally hold that financial projections, in the absence of evidence of reliability, are not required disclosures that would be material to shareholders.") (citation omitted); s*ee also id*. at 869 (omissions from a proxy statement violate Section 14(a) only if disclosure required by the SEC or would otherwise make statements materially false or misleading).

***The Proxy Statement Was Not an "Essential Link" to Damages.*** Plaintiff must plead with particularity that "the proxy statement was an essential link to the accomplishment of the [director vote] that harmed plaintiff." *Jones*, 2021 WL 1890490, at *7. Courts "break causation in securities cases into two separate but related concepts: loss causation and transaction causation." *Id.* at *15. Loss causation asks if the Individual Defendants' reelection, the advisory vote on executive compensation, or the removal of supermajority voting requirements, harmed Medpace. *Smith*, 969 F. Supp. 2d at 868. Transaction causation asks if the Proxy Statement misstatements were an "essential link" in securing stockholder votes. *Jones*, 2021 WL 1890490, at *15; *Smith*, 969 F. Supp. 2d at 868. Plaintiff pleads neither.

As for loss causation, the unarticulated harm concerns the book-to-bill-ratio, not any proxy vote. Compl., Doc. 1 at ¶¶ 193–202, PageID 52–54; *see also id*. at ¶ 112, PageID 31. Plaintiff thus pleads no causal link (much less a particularized one) between the proxy solicitation and Medpace's alleged harm. Nor has Plaintiff plausibly pled transaction causation. Generally,

transaction causation is satisfied when a plaintiff "proves that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the corporate transaction." *Leff v. CIP Corp.*, 540 F. Supp. 857, 866 (S.D. Ohio 1982) (cleaned up). Plaintiff does not allege that the proxy statements were an "essential link" in any shareholder vote causing a particularized loss. *Smith*, 969 F. Supp. 2d at 868.

**ii. Count II – Exchange Act Section 21D Claim**

Count II seeks contribution under Exchange Act Section 21D based on the pending securities class action, *Durbin v. Medpace Holdings, Inc.*, No. 1:26-cv-00346-SJD. This claim is unripe because it requires concrete, established underlying liability.

Section 21D(2) provides for contribution "jointly and severally only if the trier of fact specifically determines that such covered person knowingly committed a violation of the securities laws" or proportionately for a person "against whom a final judgment is entered in a private action." 15 U.S.C. § 78u-4(f)(2)(A)–(B). Although the Sixth Circuit has not yet explicitly addressed Section 21D ripeness, it has clearly held that "a claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Winget v. JP Morgan Chase Bank, N.A.,* 537 F.3d 565, 581–82 (6th Cir. 2008) (cleaned up); *see also Asdar Grp. v. Pillsbury, Madison & Sutro*, 99 F.3d 289, 295 (9th Cir. 1996) ("there can be no contribution *so long as the claim of the original plaintiff is still outstanding.*") (cleaned up) (emphasis added). To be sure, Section 21D's statute of limitations states that it must be brought within six months "after the entry of a final nonappealable judgment in the action . . . ." 15 U.S.C. § 78u-4(f)(9). No such liability or judgment exists, so Count II is unripe and must be dismissed.

**C. Rule 12(b)(6) – Plaintiff Failed to Plead Plausible State Law Claims.**

If the Court dismisses the federal claims (as it must), then it should decline to exercise supplemental jurisdiction over the remaining state law claims (Counts III–VI), and dismiss them.

*Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996). But even if the Court considers those claims, they should be dismissed pursuant to Rule 12(b)(6).

**i. Count III – No Plausibly Pled Breach of Fiduciary Duty**

In Count III, Plaintiff alleges that the Individual Defendants breached the fiduciary duties owed to Medpace and its stockholders through various oversight failures. Compl., Doc. 1. at ¶¶ 209–15, PageID 55–57. The lens through which Delaware fiduciary duty claims are viewed was established in *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 971 (Del. Ch. 1996).[3]

"[T]he threshold for liability based on failed oversight 'is quite high' and requires a 'lack of good faith as evidenced by sustained or systematic failure of a director to exercise reasonable oversight.'" *In re Transunion Derivative S'holder Litig.*, 324 A.3d 869, 884 (Del. Ch. 2024) (citation omitted). To sustain a claim under "'possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment,' a plaintiff must allege particularized facts sufficient to show that '(a) the directors utterly failed to implement any reporting or information system or controls; *or* (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations.'" *Ritchie on Behalf of Corcept Therapeutics, Inc. v. Baker*, No. 2022-0102-BWD, 2025 WL 2048014, at *9 (Del. Ch. July 22, 2025) (quoting *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006)) (emphasis in original). With regard to the first prong, a board need only "make a good faith effort—*i.e.*, try—to put in place a reasonable board-level system of monitoring and reporting." *Marchand v. Barnhill*, 212 A.3d 805, 821 (Del. 2019). "[O]nly a sustained or systematic failure of the board to exercise oversight—such as an utter failure to attempt to assure a reasonable information and reporting system exists—will establish the lack of

[3] Delaware law governs Plaintiff's state law claims under the internal-affairs doctrine, because that is where Medpace is incorporated. *Candid Ventures, LLC v. Nestlings, Inc.*, No. 1:24-cv-528, 2025 WL 2605838, at *4 (S.D. Ohio Sept. 9, 2025).

good faith that is a necessary condition to liability." *In re Plug Power Inc. S'holder Derivative Litig.*, No. 2022-0569-KSJM, 2025 WL 1277166, at *12 (Del. Ch. May 2, 2025) (quoting *Caremark*, 698 A.2d at 971). Here, Plaintiff fails to allege sufficient particularized facts under either *Caremark* prong.

***Caremark Prong One.*** Plaintiff's own allegations defeat the first prong. *See* Compl., Doc. 1 at ¶¶ 30–44, PageID 10–13 (Code of Conduct); *id.* at ¶¶ 45–50, PageID 13–14 (Corporate Governance Guidelines); *id.* at ¶¶ 51–59, PageID 14–16 (Audit Committee); *id.* at ¶¶ 60–61, PageID 16 (Nominating and Governance Committees); *id.* at ¶¶ 62–64, PageID 16–17 (Compensation Committee); *id.* at ¶¶ 65–71, PageID 17–19 (Insider Trading Compliance Policy). Describing these overlapping systems takes more than *40 paragraphs and 10 pages*. Far from a mere good faith effort to put in place a reasonable board level system, Plaintiff himself pleads an extensive, best-in-class system.

Those overlapping systems also foreclose any "utter failure to implement" theory. Indeed, Plaintiff himself admits that Medpace had policies, procedures, and information systems designed to address "central compliance risks" such as insider-trading and related-person transactions. Compl., Doc. 1 at ¶ 115, PageID 115. *See Marchand*, 212 A.3d at 824 (requiring only "a good faith effort to put in place a reasonable system of monitoring and reporting about the corporation's central compliance risks"). Taking Plaintiff's allegations as true, the Individual Defendants could not possibly have "utterly failed" to implement a system or controls. Plaintiff therefore fails the first prong of the *Caremark* test.

***Caremark Prong Two***. Plaintiff likewise pleads no facts, only conclusions, that the Board consciously disregarded any red flag under the second *Caremark* prong. To support a "red-flags" claim, a plaintiff must allege "(1) that the directors knew or should have known that the corporation

was violating the law, (2) that the directors acted in bad faith by failing to prevent or remedy those violations, and (3) that such failure resulted in damage to the corporation." *In re Qualcomm Inc. FCPA S'holder Deriv. Litig.*, No. 11152–VCMR, 2017 WL 2608723, at *2 (Del. Ch. June 16, 2017) (citation omitted). Under this exacting standard, Plaintiff "must plead particularized facts that the board knew of evidence of corporate misconduct—the proverbial red flag—yet acted in bad faith by consciously disregarding its duty to address that misconduct." *Ritchie*, 2025 WL 2048014, at *11 (cleaned up). For a breach of fiduciary duty claim, "red flags are only useful when they are either waived in one's face or displayed so that they are visible to the careful observer, keeping in mind that the careful observer is one whose gaze is fixed on the company's mission critical regulatory issues." *Id.* (cleaned up and citations omitted).

Here, Plaintiff fails to identify red flags that allegedly alerted the Individual Defendants of misconduct or the lack of internal controls. General allegations that several Defendants served on the boards of related-party customers and that certain forward-looking statements in the Earnings Calls were inconsistent with actual results do not support that the Board knew of corporate misconduct and consciously chose to ignore it. *See, e.g.,* Compl., Doc. 1 at ¶¶ 78–81, PageID, 20–21 (Earnings Call allegations); *id.* at ¶ 90, PageID 25 (related-party customer allegations). Membership on a board committee, even one charged with oversight of the relevant subject matter, is not a sufficient basis to infer the requisite scienter for a *Caremark* claim. *See Wood v. Baum*, 953 A.2d 136, 142 (Del. 2008). Relatedly, "ordinary past business relationships, board nominations, and board service . . . [are] insufficient to cast doubt on a director's independence" and are not red flags. *Clair v. KnowBe4, Inc.*, No. 2024-1143-KSJM, 2026 WL 1481979, at *17 (Del. Ch. May 27, 2026) (citation omitted). A director's membership on boards of related parties, standing alone, is likewise insufficient to cast doubt on the director's independence or raise a red

flag. *See Franchi v. Firestone*, No. 2020-0503-KSJM, 2021 WL 5991886, at *5 (Del. Ch. May 10, 2021); *DiRienzo v. Lichtenstein*, No. CV 7094-VCP, 2013 WL 5503034, at *13 (Del. Ch. Sep. 30, 2013). Nor are declining financial projections, public debt downgrades, or the use of "stale" financial projections, red flags sufficient to support a *Caremark* claim. *See Marchner*, 2026 WL 2332358, at *9–10. A board's awareness that a company might miss its revenue guidance, combined with access to internal inventory and production data, is also insufficient. *See In re GoPro, Inc.*, No. CV 2018-0784-JRS, 2020 WL 2036602, at *14–15 (Del. Ch. Apr. 28, 2020). If a director, "while acting in an informed fashion and with all good faith," simply holds a view of the company's future that was too optimistic or pessimistic, there is no liability for breach of fiduciary duty. *Crescent/Mach I P'ship, L.P. v. Turner*, Nos. 17455-VCN, 17711-VCN, 2007 WL 2801387, at *5 (Del. Ch. May 2, 2007). In other words, plaintiffs cannot "equate a bad outcome with bad faith." *In re GoPro, Inc.*, 2020 WL 2036602, at *14 (citation omitted). Liability for breach of fiduciary duty attaches only if the director "*intentionally*" understates or overstates the prospects of the company. *Id.* at *10 (emphasis added). Here, Plaintiff fails to allege any such plausible facts and instead offers only conclusory assertions regarding book-to-bill prospects.

Moreover, in regard to the Earnings Calls as a basis for fiduciary duty liability, Plaintiff has failed to plead around the PSLRA safe harbor, 15 U.S.C. § 78u-5(c)(1)(A)(i)–(ii), Congress's enactment of the judicial "bespeaks caution" doctrine. *In re Oracle Corp.*, 867 A.2d 904, 935 (Del. Ch. 2004). "Because, by their very nature, predictions of the future are less certain than statements about past events, courts have been less apt to find forward-looking statements material and have been more dubious of claims that it was reasonable for investors to rely upon such statements in making trading decisions." *Id.* The PSLRA's safe harbor insulates Defendants from liability for "forward-looking statements" in the Earnings Calls because the statements were accompanied by

"meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C. § 78u-5(c)(1)(A)(i). In fact, Plaintiff pleads himself directly into the PSLRA safe harbor. *See* Compl., Doc. 1 at ¶¶ 78–80, PageID 20–21 (quoting Troendle's cautionary statements); *id.* at ¶ 95, PageID 26 (Troendle cautioned that the projected 1.15 book-to-bill is "hypothetical" in light of current upward cancellation trends); *id.* at ¶ 98, PageID 27 ("funding challenges remain acute for many of our clients"). These at issue statements are therefore non-actionable under the PSLRA's safe harbor provisions.[4]

All told, Plaintiff fails to plausibly allege any claim under the *Caremark* framework.

**ii. Count IV – Aiding & Abetting Claim Fails Because No Underlying Breach**

Count IV fails because Plaintiff pleads no underlying breach in Count III. *EngageSmart*, 354 A.3d at 849. Aiding and abetting is derivative of that non-existent breach. *See Related Westpac LLC v. JER Snowmass LLC*, No. 5001-VCS, 2010 WL 2929708, at *8 (Del. Ch. July 23, 2010) (dismissing aiding and abetting claim because underlying breach of fiduciary duty claim had been dismissed).

That aside, Plaintiff has also failed to plead non-conclusory facts showing the Individual Defendants' "knowing participation" in an alleged breach. *EngageSmart*, 354 A.3d at 849. To satisfy this element, the "secondary actor must know that the primary wrongdoer's conduct constituted a breach . . . [and] the secondary actor must know that its own participation in the

---

[4] In addition to Defendant Troendle's specific cautionary statements, each Earnings Call was opened with a warning that forward-looking statements made during the Earnings Call "involve inherent assumptions with known and unknown risks and uncertainties as well as other important factors that could cause actual results to differ materially from our current expectations" and that "[t]hese factors are discussed in our Form 10-K and other filings with the SEC." Ex. A, MEDP.OQ – Q3 2025 Medpace Earnings Call Tr., Doc. 13 at PageID 98. As the Complaint itself acknowledges, the Company's 10-K contained extensive risk disclosures about backlog instability, customer funding challenges, and the unpredictability of bookings. *E.g.,* Compl., Doc. 1 at ¶ 75–77, PageID 20.

wrongful conduct was legally improper." *Id.* Liability for aiding and abetting requires that the secondary actor provide "substantial assistance" to the primary violator. *In re Mindbody, Inc., S'holder Litig.*, 332 A.3d 349, 392 (Del. 2024).

Far from facts demonstrating "knowing participation," Plaintiff merely recites the elements to an aiding and abetting cause of action, making conclusory group allegations. Compl., Doc. 1 at ¶¶ 216–21, PageID 57. There are no individualized or concrete factual allegations specific to any Defendant. *See, In re Mindbody, Inc.*, 332 A.3d 389–406 (knowing participation element must be established as to each defendant). Plaintiff fails to allege *any* particularized facts to support a "reasonable inference that [each alleged] aider and abettor *actually knew* that the primary violator's conduct was a fiduciary breach, *actually knew* that its own conduct was legally improper (even if not inherently illegal), and actively participated in the primary violator's misconduct" as Delaware law requires. *Engagesmart*, 354 A.3d at 857 (emphasis added).

Plaintiff's boilerplate allegations, contained in six paragraphs, fall far short of the requisite standard. These deficiencies also defeat the damages element of any claim. *See* Section IV(B)(i), *supra.*

#### iii. Count V – Plaintiff Fails to Sufficiently Plead a *Brophy* Claim.

***Possession and Scienter Are Not Pled.*** "In Delaware, the general rule is that 'corporate officers and directors may purchase and sell the corporation's stock at will, without any liability to the corporation.'" *Tilden v. Cunningham*, No. 2017-0837-JRS, 2018 WL 5307706, at *19 (Del. Ch. Oct. 26, 2018). That said, under what is called the "seminal" case of *Brophy v. Cities Serv. Co.*, 70 A.2d 5 (Del. Ch. 1949), an insider's trade may be deemed a breach of the fiduciary duty of loyalty, when: "(1) the corporate fiduciary possessed material, nonpublic information; and (2) the corporate fiduciary used that information improperly by making trades because she was motivated, in whole or in part, by the substance of that information." *Tilden*, 2018 WL 5307706,

at *19 (cleaned up); *see also Witmer v. Armistice Cap., LLC*, 344 A.3d 632, 654 (Del. Ch. 2025) (same) (quoting *In re Oracle Corp.*, 867 A.2d at 934). A *Brophy* claim requires Plaintiff to plead "that *each* sale by *each* individual defendant was entered into and completed on the basis of, and because of, adverse material non-public information." *In re Camping World Holdings, Inc. S'holder Derivative Litig.*, No. 2019-0179-LWW, 2022 WL 288152, at *9 (Del. Ch. Jan. 31, 2022) (emphasis added) (citation omitted). Plaintiff's insider trading claim fails at the pleading stage on all *Brophy* elements.

***No Possession of Material, Nonpublic Information***. *Brophy* requires actual possession of specific material, *nonpublic* information and trading on it, not mere access. *Tilden*, 2018 WL 5307706, at *19. Yet here, Plaintiff pleads that Medpace *publicly* disclosed the information he says motivated the trades—through the Earnings Calls and SEC filings. *See, e.g.,* Compl., Doc. 1 at ¶¶ 75–81, PageID 20–21; *id.*; *supra* at n.3. This dooms Plaintiff's claim because he "has not alleged what material, nonpublic information [the Individual Defendants] possessed that the market did not." *Tilden*, 2018 WL 5307706 at *19 (dismissing *Brophy* claim).

Plaintiff alleges no more than Individual Defendants were directors or senior officers. Compl., Doc. 1 at ¶ 122, PageID 33. At best, that suggests potential access to, not actual possession of, specific material nonpublic information. *See, e.g., In re Oracle Corp.*, 867 A.2d at 934 (requiring pleading of actual possession, not mere access or corporate position); *Camping World*, 2022 WL 288152, at *11 ("[t]his court will not credit conclusory allegations that the defendants 'must have obtained some additional, material nonpublic information' because of their roles as fiduciaries [and their board membership].") (citing *Tilden*, 2018 WL 5307706, at *19); *In re Zimmer Biomet Holdings, Inc. Derivative Litig.*, No. CV 2019-0455-LWW, 2021 WL 3779155, at *20 (Del. Ch. Aug. 25, 2021) ("[d]efendants [having] potential access to information … is not the

same as actually possessing the specific information and knowing it.") (cleaned up); *Tilden*, 2018 WL 5307706, at *19 (allegation that defendants obtained material, nonpublic financial information by just being directors is conclusory and insufficient to support insider trading claim).

Plaintiff does not identify any specific information, how any Defendant learned it, or when it was known. His sole factual allegation is that Defendants sold stock knowing that the book-to-bill ratio would come in at less than 1.15. Compl., Doc. 1 at ¶ 122, PageID 33. Consistent with their other concocted lawsuits, *see* Section I, *supra*, Plaintiff and his counsel simply insert several charts showing the Defendants' sale of Medpace stock on a date purportedly after the Earnings Calls. *Id.* at ¶ 123–33, PageID 34–37. Here again, however, Plaintiff alleges no nonpublic information that each Defendant obtained—such as the actual book-to-bill ratio on the date of each trade, or how each particular Defendant personally learned of the alleged nonpublic information. Plaintiff also alleges no facts showing that the trades were motivated by possession of the alleged nonpublic information about the book-to-bill ratio, or when any Defendants "knew" that the book-to-bill ratio would come in at less than 1.15.

***No Plausible Scienter Allegations***. To survive a motion to dismiss, Plaintiff must plead "[p]articularized facts—not speculation— . . . to support a rational inference of scienter." *Camping World*, 2022 WL 288152, at *12. "[T]he plaintiff must allege that the decision to trade [came] after the fiduciary received the material information and before that information became public." *In re Plug Power Inc. S'holder Derivative Litig.*, 2025 WL 1277166, at *10. Plaintiff fails to plausibly plead that Defendants acted with scienter.

The mere fact Defendants sold stock during a period when the stock price was allegedly elevated is insufficient to support a *Brophy* claim. As one court noted in a statement particularly apt here, "[n]oticeably absent from the Complaint are any well-pled facts that the trades at issue

represented a deviation from the sellers' past trading practices." *In re Clovis Oncology, Inc. Derivative Litig.*, No. CV 2017-0222-JRS, 2019 WL 4850188, at *16 (Del. Ch. Oct. 1, 2019); *Rattner v. Bidzos*, No. Civ.A. 19700, 2003 WL 22284323, at *12 (Del. Ch. Sept. 30, 2003) ("the Amended Complaint does not assist in determining whether the pattern of executed trades was the product of an orchestrated scheme to defraud the market and the Company's shareholders or good faith adherence to Company policy or consistent with prior individual practices."); *Guttman v. Huang*, 823 A.2d 492, 503–04 (Del. Ch. 2003) (declining to draw an inference of scienter from the allegation that challenged trades were unusually timed where the complaint "fail[ed] to specify what trades, if any, [defendant] directors made in [the] prior year"). Similarly, the magnitude of sales alone, absent particularized facts showing possession of material nonpublic information, does not state a *Brophy* claim. *E.g., Tilden*, 2018 WL 5307706, at *20 ("Nor can the Court infer scienter based only on the size of the trades."); *Guttman*, 823 A.2d at 504 ("the mere fact that two of the directors sold large portions of their stock does not … support the conclusion that those two directors face a real threat of liability.").

Here, Plaintiff merely alleges that Defendants made several – what he considers to be sizeable – trades during the relevant period between April 22, 2025 and December 3, 2025. *See* Compl., Doc. 1 at ¶¶ 122–35 PageID 33–38. He does not show that the trades represented a deviation from past trading practices. *See In re Clovis Oncology, Inc. Derivative Litig.*, 2019 WL 4850188, at *16; *Guttman*, 823 A.2d at 503–04. Nor does he connect any specific material, nonpublic information to any specific trade made by any Defendant. *In re Plug Power Inc. S'holder Derivative Litig.*, 2025 WL 1277166, at *10. Scienter cannot be inferred based only on the size of the at issue trades. *Tilden*, 2018 WL 5307706, at *20; *Guttman*, 823 A.2d at 504.

#### iv. Count VI – Plaintiff's Unjust Enrichment Claim Fails.

An unjust enrichment claim that "depends on the *Brophy* claim … fails" where the plaintiff "[has] failed to state a *Brophy* claim." *In re Plug Power Inc. S'holder Derivative Litig.*, 2025 WL 1277166, at *17. In addition, Count VI is duplicative of the breach of fiduciary duty claim in Count III, providing an independent basis to dismiss the unjust enrichment claim. *Witmer*, 344 A.3d at 662 ("[t]he Court frequently treats duplicative fiduciary duty and unjust enrichment claims in the same manner when resolving a motion to dismiss").

## V. <u>Conclusion</u>

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.

Dated: August 25, 2026

Respectfully submitted,

*s/ Michael L. Scheier*
Michael L. Scheier
Jacob D. Rhode
Keating Muething & Klekamp PLL
One E. 4th Street, Suite 1400
Cincinnati, OH 45202
Tel: (513) 579-6400
mscheier@kmklaw.com
jrhode@kmklaw.com
*Attorneys for Defendants*